UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SERGIO PEREZ,<br><br>        Plaintiff,<br><br>     v.<br><br>CHARTER COMMUNICATIONS, LLC, et al.,<br><br>        Defendants. | Case No.  25-cv-03761-EKL<br><br>**ORDER GRANTING MOTION TO REMAND**<br><br> Re: Dkt. No. 17 |

Plaintiff Sergio Perez initially filed this action in Monterey County Superior Court, alleging that Defendants Charter Communications, LLC and related entities (collectively, "Charter" or "Defendants")[1] fail to properly reimburse their customers for service interruptions or outages.  Perez seeks injunctive and declaratory relief based on alleged violations of California state law.  Before the Court is Perez's motion to remand after Charter's timely removal of this case from state court.  Perez argues that the Court does not have subject matter jurisdiction over his claims under 28 U.S.C. § 1332 because Charter fails to demonstrate that the amount in controversy exceeds $75,000.  Having considered the parties' briefs, related filings, and arguments at the hearing, Perez's motion is GRANTED.

## I.      BACKGROUND

Defendants are internet service providers with millions of customers nationwide, including about five million customers in California.  Decl. of Tracey Peters ¶ 5, ECF No. 23-2 ("Peters Decl.").  At times, Charter customers experience service disruptions or outages for a host of

---

[1] The related entities consist of Defendants Charter Communications Operating, LLC; Charter Communications Holdings, LLC; Charter Communications Holding Company, LLC; Charter Communications ASC, LLC; and Charter Communications (CCI), Inc.

reasons, some which are within the customers' control (*e.g.*, turning off their modems) and others that are not (*e.g.*, technical issues or natural disasters). *Id.* ¶ 7. Subject to certain terms and conditions, "Charter will provide its customers credits when they experience qualifying outages of Spectrum services lasting more than two hours." *Id.* ¶ 9. Perez is one of Charter's current customers, who has received credits in five instances since January 2023, when he has requested them. *Id.* ¶ 10.

On March 17, 2025, Perez filed this action against Charter in Monterey County Superior Court. Perez seeks public injunctive relief under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*; California's False Advertising Law, Cal. Bus. & Prof. Code § 17500 *et seq.*; and California's Consumers Legal Remedies Act ("CLRA"), Cal. Civil Code § 1750 *et seq.*, as well as declaratory relief and attorneys' fees under California state law. Notice of Removal Ex. A at 7-14, ECF No. 1-1 ("Compl."). Perez seeks a "declaration that Charter's [reimbursement] policy is unlawful" and "a public injunction requiring Charter to automatically refund affected customers for service fees incurred during known [service] disruptions[,]" "to remove exculpatory language from customer contracts[,]" and to "provide clear disclosures about the availability of refunds" in its advertising. *Id.* ¶ 7. On April 30, 2025, Charter filed a timely notice of removal based on diversity jurisdiction under 28 U.S.C. § 1332(a). Notice of Removal ¶ 13, ECF No. 1. On May 29, 2025, Perez filed a motion to remand this case to state court. Mot. to Remand, ECF No. 17 ("Mot."). On August 27, 2025, the Court held a hearing on Perez's motion. ECF No. 26.

## II.   LEGAL STANDARD

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). When an action is originally filed in state court, a "defendant may remove [it] to federal court based on federal question jurisdiction or diversity jurisdiction." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009) (citing 28 U.S.C. § 1441). But there is a "'strong presumption' against removal jurisdiction," and "the defendant always has the burden of establishing that removal is proper." *Gaus v. Miles*, 980 F.2d 564, 566 (9th Cir. 1992) (collecting cases). Consistent with these principles and with reverence for state courts, federal

United States District Court
Northern District of California

courts resolve "all ambiguity in favor of remand." *Hunter*, 582 F.3d at 1042 (citation omitted).

Under 28 U.S.C. § 1332(a), diversity jurisdiction requires complete diversity and that the amount in controversy "exceed[] the sum or value of $75,000[.]" *Gonzales v. CarMax Auto Superstores, LLC*, 840 F.3d 644, 648 (9th Cir. 2016) (citation omitted). When the amount in controversy is unclear based on the face of the pleadings, the removing party is required to establish, by a preponderance of the evidence, that this requirement is met. *Corral v. Select Portfolio Serv'g, Inc.*, 878 F.3d 770, 774 (9th Cir. 2017) (collecting cases). "'Conclusory allegations as to the amount in controversy are insufficient.'" *Id.* (quoting *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090-91 (9th Cir. 2003)).

If a plaintiff seeks declaratory or injunctive relief, courts determine the amount in controversy by measuring "the value of the object of the litigation." *Id.* at 775 (citation omitted); *Chapman v. Deutsche Bank Nat'l Tr. Co.*, 651 F.3d 1039, 1045 n.2 (9th Cir. 2011). Generally, the amount in controversy encompasses, among other things, "the cost of complying with an injunction, as well as attorneys' fees awarded under fee shifting statutes." *Gonzales*, 840 F.3d at 648-49 (citing *Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1046 n.3 (9th Cir. 2000)).

## III.  DISCUSSION

In his motion to remand, Perez argues that this case should be remanded on four different bases: lack of subject matter jurisdiction, lack of equitable jurisdiction, lack of Article III standing, and abstention principles. Because the Court holds that it lacks subject matter jurisdiction, the Court does not reach Perez's other bases for remand but denies Perez's request for attorneys' fees.[2]

### A.   The Court Lacks Subject Matter Jurisdiction Over Perez's Claims.

As it is undisputed that complete diversity exists between the parties, the sole question before the Court is whether the amount in controversy exceeds $75,000 for purposes of subject

---

[2] After the hearing, Charter filed a statement of recent decision relating to the issue of equitable jurisdiction. ECF No. 28. Perez filed a motion to strike Charter's statement, ECF No. 29, which Charter opposed, ECF No. 30. Because the Court does not reach the issue of equitable jurisdiction, the motion to strike is DENIED as moot.

United States District Court
Northern District of California

matter jurisdiction.  Because the complaint does not "seek a specific dollar amount in damages," and the amount in controversy is not otherwise clear from the face of the complaint, Charter bears the burden to prove the amount in controversy by a preponderance of the evidence.  *Corral*, 878 F.3d at 774.

Perez seeks a public injunction, requiring Charter to automatically refund its customers for service disruptions for which it is responsible and to change related policies and advertisements.  Compl. ¶ 7.  According to Charter, the requested injunction would impose costs stemming from (1) implementation of a system that would identify all service outages and their causes; (2) providing refunds when customers experience service outages that are Charter's responsibility; and (3) changing its advertisements to address service disruptions and the availability of and means by which to obtain refunds.  Opp. to Mot. to Remand at 4-6, ECF No. 23 ("Opp.").  Charter urges the Court to calculate the amount in controversy by considering the costs of complying with the injunction as to *all* Charter customers.  *Id.* at 4-5.  In the alternative, Charter maintains that even the costs of affording relief to Perez individually would exceed $75,000.  *Id.* at 9-10.

In order to address Charter's arguments, the Court begins by addressing the preliminary question of whether the anti-aggregation principle, which has been applied in the class-action context, should apply in public injunction cases, and relatedly whether the "either viewpoint" rule should be considered.  The Court then turns to whether the cost of compliance with the injunction that is sought in this matter and the potential award of attorneys' fees would exceed $75,000.  The Court ultimately concludes that Charter has failed to demonstrate that the amount in controversy is greater than $75,000, thus requiring remand of this case.

### 1.    Framework for Calculating Amount in Controversy

The threshold question is whether the amount in controversy is Charter's costs of compliance with the proposed injunction as to *all* its customers, or whether the Court may consider only costs related to affording Perez injunctive relief on an individual basis.  Charter urges the Court to apply the "either viewpoint" rule, and to reject the application of the anti-aggregation principle in this case.

United States District Court
Northern District of California

*Anti-Aggregation Principle:* In class actions where plaintiffs seek solely injunctive relief, courts have applied the anti-aggregation principle, which prevents courts from aggregating the damages corresponding to each plaintiff's claim in determining the amount in controversy. *McCauley v. Ford Motor Co. (In re Ford Motor Co./Citibank (S.D.), N.A.)*, 264 F.3d 952, 958-59 (9th Cir. 2001). The application of this rule turns on whether "each plaintiff is asserting an individual right or, rather, together the plaintiffs 'unite to enforce a single title or right in which they have a common and undivided interest.'" *Id.* at 959 (quoting *Snyder v. Harris*, 394 U.S. 332, 335 (1969)). If plaintiffs seek to enforce a common and undivided interest in a "single title or right" (*e.g.*, a piece of property), the Court may aggregate the costs of complying with the injunction as to *all plaintiffs* when calculating the amount in controversy. *Id.* On the other hand, if the plaintiffs each assert an individual right, "the test is the cost to the defendants of an injunction running in favor of one plaintiff." *Id.* (citation omitted).

Charter argues that Perez's objection to aggregation here is irrelevant since this is a single-plaintiff case. "Courts that have examined the issue generally find that" because public injunction cases under the UCL and CLRA seek relief "on behalf of numerous individuals, the claims are sufficiently akin to class actions that the prohibition against aggregation" applies. *Enriquez v. Sirius XM Radio, Inc.*, No. 21-cv-1240, 2022 WL 4664144, at *4 (E.D. Cal. Sep. 30, 2022) (collecting cases); *see also Doe v. Aetna, Inc.*, No. 17-cv-07167, 2018 WL 1614392, at *4-6 (N.D. Cal. Apr. 4, 2018) ("Because the instant case does not involve a common and undivided interest or a single res, the Court considers the cost to [defendant] of complying with the [public UCL] injunction vis-à-vis [the individual plaintiff] only[.]").[3]

---

[3] Charter cites *Boyle v. Yellow Social Interactive Ltd*, which determined that actions seeking public injunctive relief are private, as opposed to representative, actions. No. 25-cv-00063, 2025 WL 885101, at *5 (C.D. Cal. Mar. 20, 2025) (declining to apply the anti-aggregation rule, and instead applying the either-viewpoint rule, because there was "only one plaintiff and no separate and distinct claims to aggregate"). The Court, however, declines to follow *Boyle*, and adopts the approach taken by the majority of the district courts in the Circuit, finding that actions seeking public injunctive relief are "sufficiently akin to class actions" seeking injunctive relief. *Enriquez*, 2022 WL 4664144, at *4.

United States District Court
Northern District of California

In this case, the Court finds that this action does *not* involve "a single indivisible res," nor "a right with a common and undivided interest." *Jaimes v. Am. First Fin. LLC*, No. 23-cv-00978, 2023 WL 6783774, at *3 (N.D. Cal. Oct. 12, 2023) (quoting *Ford*, 264 F.3d at 959). If granted, the public injunction would require Charter to establish a process through which each customer could obtain automatic refunds. Each customer would receive a separate refund contingent on the particular service outage(s) each customer experiences. Each customer's interest in a refund is highly individualized; thus, customers do not share a "common and undivided" interest in the relief Perez seeks. Accordingly, in determining whether the amount in controversy is over $75,000, the Court looks to the cost of Charter's compliance with the public injunction solely as to Perez. *Enriquez*, 2022 WL 4664144, at *5 ("There is nothing before the Court that suggests that the rights at issue are anything other than individual 'non-unified' rights[,] [so] the costs of the injunction to [defendant] cannot be aggregated[.]").

*"Either Viewpoint" Rule:* Relatedly, Charter urges the Court to apply the "either viewpoint" rule, which would require the Court to consider the total costs to Charter of complying with the injunction. "Under the 'either viewpoint' rule, the test for determining the amount in controversy is the pecuniary result to either party which the judgment would directly produce." *Ford*, 264 F.3d at 958 (citing *Ridder Bros. Inc., v. Blethen*, 142 F.2d 395, 399 (9th Cir. 1944)). This rule, however, is inapplicable where – as here – a plaintiff seeks public injunctive relief and there is no common and undivided interest among the plaintiff and the others impacted. *Enriquez*, 2022 WL 4664144, at *4-5 (collecting cases); *see also Ford*, 264 F.3d at 958-59 (acknowledging "the inherent conflict between the 'either viewpoint' rule and the non-aggregation rule when calculating the amount in controversy in class action suits seeking equitable relief," and noting "that the former must yield" (citing *Snow v. Ford Motor Co.*, 561 F.2d 787, 788-791 (9th Cir. 1977))). Accordingly, the Court declines to apply the "either viewpoint" rule. Instead, the Court looks only to Charter's costs of complying with the injunction as to Perez.

### 2. Cost of Compliance

Charter claims the costs it would incur based on "an injunction running in favor of just Perez would exceed $75,000." Opp. at 9-10. Charter points to the costs of developing technology

United States District Court
Northern District of California

to "proactively identify every outage and its duration,"[4] and the cost of changing its advertising to inform customers of the service disruption refund program. *Id.* at 10. Both arguments are unavailing for two reasons.

*First*, each of the costs that Charter relies on are fixed administrative costs, which the Court may not consider for purposes of calculating the amount in controversy. *Enriquez*, 2022 WL 4664144, at *4 (citing *Ford*, 264 F.3d at 960-61; *Doe*, 2018 WL 1614392, at *6). Again, the Ninth Circuit's decision in *Ford* is instructive. In *Ford*, the defendants argued that "the fixed costs to Ford and Citibank of reinstating and maintaining" a rebate accrual "program would be the same whether it is done for one plaintiff or for six million." 264 F.3d at 960. The Ninth Circuit rejected this argument, noting that if "the administrative costs of complying with an injunction were permitted to count as the amount in controversy, 'then every case, however trivial, against a large company would cross the threshold.'" *Id.* at 961 (quoting *In re Brand Name Prescription Drugs Antitrust Litig.*, 123 F.3d 599, 610 (7th Cir. 1997)) (declining to apply the "either viewpoint rule" to administrative costs to establish the jurisdictional amount). The court emphasized that counting administrative costs would be "fundamentally violative of the principle underlying the jurisdictional amount requirement – to keep small diversity suits out of federal court." *Id.* The same reasoning applies here. Any expense that Charter would incur from needing "to further develop [its] technology" to better detect outages and to change its advertising are administrative costs. Opp. at 10. These types of fixed administrative costs cannot be considered for the purpose of calculating the amount in controversy.

*Second*, even if the Court could consider administrative costs, Charter does not provide sufficient information from which the Court could determine the costs that Charter would incur.

---

[4] Specifically, Defendants allege they cannot identify why their service outages or disruptions occurred, if a customer turns off their modem or if the electricity shuts off. Opp. at 5 (citing Peters Decl. ¶ 12). This allegedly requires them to develop and implement technology that could distinguish between these situations and service outages that are their fault. *Id.* (citing Peters Decl. ¶¶ 13-16). However, Charter has not shown that a new, costly system to detect the source of outages would be required to afford Perez injunctive relief. The complaint alleges – and Defendants do not appear to contest – that Charter is required to report known service outages to the Federal Communications Commission, so they "should know when these outages occur and when service is restored." Compl. ¶ 23.

*See Harville v. Richman Prop. Servs.*, No. 24-cv-07832, 2024 WL 4557665, at *5-6 (C.D. Cal. Oct. 22, 2024) (finding that, where defendant did not explain how "the cost of its leasing and application software relates to the costs that would be incurred to comply with a hypothetical injunction requiring changes to its rental applications," it did not provide a "basis for the Court to determine what that amount should be").  Charter does not provide any monetary estimates – other than the bald assertion that the cost would be above $75,000, Opp. at 4-6, 9-10 – or any details from which the Court could evaluate the appropriateness of including any expenses related to complying with the injunction when calculating the amount in controversy.  *Harville*, 2024 WL 4557665, at *6; *see also Corral*, 878 F.3d at 774.  Thus, Charter provides no basis for the Court to determine what amounts should be considered for purposes of the jurisdictional analysis.

Accordingly, the Court finds Charter does not meet its burden to establish the amount in controversy requirement is met, based on its cost of compliance with the public injunction Perez seeks.[5]

### 3.    Attorneys' Fees

The Court must also "include future attorneys' fees recoverable by statute or contract when assessing whether the amount-in-controversy requirement is met." *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 794 (9th Cir. 2018) (collecting cases).  The defendant bears the burden to prove the amount of attorneys' fees at stake by a preponderance of the evidence with "summary-judgment-type evidence." *Id*. at 795 (collecting cases).  Where, as here, a plaintiff only seeks public injunctive relief and there is no common and undivided interest, courts may solely consider the plaintiff's "pro rata share of the fees, *i.e.* his share of the fees of the California consumers/subscribers who would benefit from the public injunction[.]" *Enriquez*, 2022 WL 4664144, at *6 (collecting cases).

---

[5] Notably, Charter does not argue that refunding Perez for additional service outages would impose significant costs.  To the contrary, in its opposition, Charter explains that Perez has reported service disruptions in five instances since 2023 and has received a total of about $20 in credits as a result.  Opp. at 5 (citing Peters Decl. ¶ 10).  As discussed, the Court may not consider administrative costs for purposes of calculating the amount in controversy.  The refunds Charter would provide to Perez are the only costs identified by Defendants which would be non-administrative.  However, as the past refunds indicate, the potential refunds to Perez would not exceed $75,000.

In the notice of removal, Charter asserts that, "[a]ssuming an hourly rate of around $350 per hour," Perez's attorneys' fees would exceed $75,000 "if Perez's attorneys . . . spen[t] at least 215 hours total on this case . . . , which they inevitably would have to do to litigate this case to final judgment." Notice of Removal ¶ 37 ("In comparable cases, Perez's own attorneys have requested attorneys' fees in excess of $75,000 to settle cases, and courts have awarded them such amounts upon finding the requests to be reasonable." (citing cases)). This argument does not account for the non-aggregation principle, and Charter fails to provide a pro rata estimation of attorneys' fees. Because Perez's pro rata share is unknown, the Court finds that Charter has not met its burden as to the amount in controversy.[6] *Enriquez*, 2022 WL 4664144, at \*6 ("Because the Court resolves all doubt and ambiguity concerning attorneys' fees against [defendant], the pro rata share is less than $75,000[.]" (citations omitted)).

\* \* \*

In sum, Charter has failed to meet its burden to demonstrate that the amount in controversy requirement is satisfied. The Court remands this case based on a lack of diversity jurisdiction pursuant to 28 U.S.C. § 1447(c).

### B.    Perez is Not Entitled to Attorneys' Fees.

Under 28 U.S.C. § 1447(c), a court may award attorneys' fees if the removing party "lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005) (citations omitted). Among other considerations, "the degree of clarity in the relevant law at the time of removal is a relevant factor in determining whether a defendant's decision to remove was reasonable." *Grancare, LLC v. Thrower by and Through Mills*, 889 F.3d 543, 552 (9th Cir. 2018) (citation omitted).

Perez argues that Charter's "removal was improper" because it "is completely unsupported

---

[6] Even if the Court were to consider the full sum of potential attorneys' fees, Charter's argument still falls short. Charter generally alleges that "Perez's fee request alone exceeds $75,000" based on "the attorney hours that would be needed" to "litigate this case through trial." Opp. at 6. But Charter offers no support for this assertion, and it "makes no effort to explain how" the other cases brought by Perez's counsel are "comparable to this one." *Harville*, 2024 WL 4557665, at \*4. Charter's conclusory statements are insufficient to show by a preponderance of the evidence that the jurisdictional requirement has been met.

by evidence of the amount in controversy or diversity." Mot. at 14. He also asserts that "[t]he legal principles and caselaw cited throughout [Charter's] brief were well-known before [Charter] improvidently removed this case, and [Charter] should be liable for the waste occasioned by that decision." *Id.* at 15. The Court finds that Charter's removal was not objectively unreasonable. As discussed above, the amount in controversy here turns on whether the anti-aggregation rule applies to claims for public injunctive relief, which the Ninth Circuit has not squarely addressed. Thus, Charter's arguments were not objectively unreasonable. *See Grancare*, 889 F.3d at 552; *see also Lussier v. Dollar Tree Stores, Inc.*, 518 F.3d 1062, 1065 (9th Cir. 2008) ("[R]emoval is not objectively unreasonable solely because the removing party's arguments lack merit, or else attorney's fees would always be awarded whenever remand is granted."). Consequently, Perez is not entitled to recover attorneys' fees.

## IV. CONCLUSION

For the foregoing reasons, Perez's motion to remand is GRANTED.

**IT IS SO ORDERED.**

Dated: February 2, 2026

_____
Eumi K. Lee
United States District Judge

United States District Court
Northern District of California